UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NIDHAL K.,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

CASE NO. C18-28-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff Nidhal K. seeks review of the denial of her application for Supplemental Security Income. She contends the ALJ erred by misevaluating the medical evidence, failing to find certain impairments were severe, and finding she could perform light work. Dkt. 12. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 52 years old, has a high school education, and has no past relevant work. Tr. 49, 60. She applied for benefits in August 2014, alleging disability as of October 2010. Tr. 174. After her application was denied initially and on reconsideration, the ALJ conducted a hearing and, on November 17, 2016, issued a decision finding plaintiff not disabled. Tr. 20-35.

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[1] the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date, she had the following severe impairment: status post OIRF right shoulder with ongoing arthritis, and this impairment did not meet or equal the requirements of a listed impairment.[2] Tr. 22, 27. The ALJ found that plaintiff had the residual functional capacity to lift/carry and push/pull up to 20 pounds occasionally and up to 10 pounds frequently, using both arms together; if she used her right arm only to lift/carry she could lift 10 pounds occasionally and seldom lift 15 pounds; she could stand/walk six hours in an eight-hour workday with regular breaks; she had no limitation in her ability to sit; she could occasionally push/pull within these exertional limitations; she had an unlimited ability to climb ramps and stairs, but should never climb ladders, ropes, or scaffolds; she had an unlimited ability to balance and could frequently stoop, kneel, crouch, and crawl; she should not reach or work overhead with her right dominant arm; she may use her right arm for keyboarding or other fine motor skill tasks for one hour at a time, up to six hours; she could occasionally reach with her right dominant arm in all directions; she should avoid concentrated exposure to extreme cold, vibrations, fumes, odors, dusts, gases, and poor ventilation. Tr. 27. The ALJ found that plaintiff had no past relevant work but, as there were jobs that existed in significant numbers in the economy that she could perform, she was not disabled. Tr. 34-35.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

# DISCUSSION

**A.  Medical evidence**

Plaintiff argues that the ALJ erred by failing to properly evaluate the opinions of examining and treating doctors Lynn Staker, M.D., Lawrence Holland, M.D., James Symonds, M.D., and J. Dalton, M.D., and by failing to give adequate explanation for not giving these opinions more weight. Dkt. 12 at 2.

In general, the ALJ should give more weight to the opinion of a treating doctor than to that of a non-treating doctor, and more weight to the opinion of an examining doctor than to that of a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Id.* at 830-31. An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating her interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer her conclusions; she must also explain why her interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

*1.  Dr. Staker*

Dr. Staker examined plaintiff in June 2014 and opined that plaintiff was severely limited and unable to meet the demands of sedentary work. Tr. 275-77. He found decreased range of motion and weakness of her shoulder. Tr. 278. He opined that plaintiff's impairment was permanent and that with the language barrier and this disability, he did not see where plaintiff would be employable. Tr. 277, 279.

The ALJ gave this opinion little weight, finding that it was not consistent with the overall evidence in the record including plaintiff's benign examination findings. Tr. 33. The ALJ identified these examination findings to include findings of nonorganic giveaway weakness; intact sensation for light touch, pinprick, vibration and joint position perception; full strength throughout both upper extremities without atrophy; normal reflexes; no crepitus; normal shrug; and normal strength in the wrist and hands. Tr. 33-34.

Plaintiff argues that the evidence the ALJ cited to in support of this finding was weak and misleading, not representative of the record as a whole, and included records that did not contain the findings the ALJ claimed. Dkt. 12 at 4. The court agrees. An ALJ may give less weight to an opinion that is inconsistent with other evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). But the ALJ cited to evidence that was consistent with Dr. Staker's opinion and, where it was inconsistent, the ALJ failed to explain how the inconsistency was connected to or undermined Dr. Staker's opinion.

The ALJ cited to a neurological examination for headaches, which noted intact sensation for light touch, pinprick, vibration and joint position perception, normal reflexes, and normal shrug. Tr. 104. But the ALJ made no connection between these neurological findings and plaintiff's shoulder impairment. The ALJ cited to an examination that found decreased motor strength in the entire right upper extremity including the right hand and grip. Tr. 462. But the ALJ stated that the record shows normal strength in the wrist and hands. And the ALJ cited to treatment notes that recorded decreased range of motion, tenderness, swelling, pain, and decreased strength in her right shoulder. Tr. 593, 601, 610. But the ALJ found that the record shows full strength throughout both upper extremities. In short, the ALJ listed several findings that she stated were inconsistent with Dr. Staker's opinion, but which in fact were consistent

with it. And the ALJ failed to explain how other findings were inconsistent with Dr. Staker's findings or why the other doctors' findings should be accorded more weight than Dr. Staker's. For all of these reasons, this finding is not supported by substantial evidence and is insufficient to reject an examining doctor's opinion.

The ALJ also found that Dr. Staker's statement that plaintiff is unemployable due to her language barrier as well as her disability was inconsistent with two notes in the record: one treatment note stating that plaintiff speaks moderate English and another treatment note stating that plaintiff had excellent English comprehension and no language barrier. Tr. 34. Plaintiff argues that this finding ignored the overwhelming evidence that showed that plaintiff was assisted by an interpreter in at least 18 different treatment encounters, the fact that she stated she required an interpreter when the ALJ attempted to conduct the hearing without using the interpreter's service, and her testimony that she did not speak or read much English. Dkt. 12 at 7. Respondent asserts that records regarding the use of an interpreter generally do not describe her ability to speak English and state only that an interpreter was used, and that, in any event, the vocational expert testified that lack of language proficiency would not preclude all of the work he identified. Dkt. 16 at 3.

The ALJ identified the two instances in the record that describe plaintiff as at least moderately able to communicate in English. At a visit in May 2016, Jiang Wu, M.D., stated: "Given her excellent English and comprehension, there is no language barrier." Tr. 594. And at a visit in June 2015, David Judish, M.D., stated plaintiff is a "Jordanian woman who speaks moderate English, but she was assisted in communication throughout by interpreter." Tr. 659. But the vast majority of the references to plaintiff's language skills throughout the record indicate that she required an interpreter in order to conduct her medical appointments. The ALJ's

cherry-picked instances do not undermine the weight of the evidence. And the fact that the VE testified that the jobs he identified could be performed without language proficiency is irrelevant to the ALJ's finding, as it does not demonstrate inconsistency with Dr. Staker's opinion.

The ALJ failed to provide valid reasons, supported by substantial evidence, for rejecting Dr. Staker's opinion.

　　2.　　*Dr. Holland*

In July 2015, treating orthopedist Dr. Holland wrote a letter in which he stated that plaintiff had a "shoulder injury that prevents her from being able to use her arm except at her side," and she "cannot do things where she has to work with her hands away from the side of her body." Tr. 631. The ALJ gave this opinion little weight for the same reason as Dr. Staker's opinion—that it was not consistent with the overall evidence in the record including the benign examination findings identified above. Tr. 33. As with Dr. Staker's opinion, this was not a valid reason, supported by substantial evidence, to reject the opinion.

The ALJ also found that Dr. Holland's opinion was based on plaintiff's subjective statements and not consistent with orthopedic specialist statements that she should have an improvement with physical therapy exercises to increase her range of motion and reduce her pain. Tr. 34. The ALJ cited to two treatment notes to support this finding. The first was Dr. Holland's November 2014 note. At that visit, Dr. Holland found decreased range of motion and moderate weakness in plaintiff's right shoulder; he stated that he would recommend physical therapy and modification of her activities, as it was not something for which there is known surgery. *Id.* The second was a September 2015 note from Winston Warme, M.D. Tr. 548. Dr. Warme stated that he did not think a surgical intervention was warranted and recommended that

she continue with the exercises she had learned in physical therapy. Tr. 548. He believed that as her range of motion improved, her pain would decrease. *Id.*

An ALJ may give less weight to a medical opinion that is based to a large extent on a claimant's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But an ALJ does not provide adequate reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). Dr. Holland's treatment notes show that he conducted physical examinations and reviewed imaging studies in assessing plaintiff's condition; there is no suggestion in his notes that he questioned plaintiff's complaints or that he relied on them more than his own observations. Tr. 473-74, 538. This was not a valid reason to reject Dr. Holland's opinion.

An ALJ may give less weight to an opinion that is inconsistent with other evidence in the record. *Batson*, 359 F.3d at 1195. Here, although the ALJ identified Dr. Warme's treatment note as inconsistent with Dr. Holland's opinion, the ALJ did not explain how these doctors' opinions are inconsistent. Both Dr. Holland and Dr. Warme recommended against surgery and opined that plaintiff should engage in physical therapy. Because the ALJ did not explain how she interpreted these opinions to be inconsistent or the reason why she gave Dr. Warme's assessment more weight than Dr. Holland's (despite their similarities), this was not a valid reason to reject Dr. Holland's opinion.

The ALJ failed to provide valid reasons, supported by substantial evidence, for rejecting Dr. Holland's opinion.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 7

*3.    Dr. Symonds*

Dr. Symonds examined plaintiff in December 2014. He opined that plaintiff could lift and carry 10 pounds occasionally and less than 10 pounds frequently, she could stand and walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday, and there should be frequent changes in the sitting and standing position. Tr. 464. He opined that plaintiff could occasionally stoop and never kneel or crouch, she could never reach with her right arm, and she could occasionally grasp and grip with her right hand because of 3/5 motor strength. *Id.*

The ALJ gave Dr. Symonds's opinion partial weight, finding that it was not consistent with the overall evidence including plaintiff's exam findings and the findings of orthopedic specialist and surgeons. Tr. 32-33. The ALJ agreed that plaintiff required limitation to the use of her right arm, but found that using both arms together she could lift more weight than Dr. Symonds opined. Tr. 33.

The ALJ identified the same evidence discussed above as inconsistent with Dr. Symonds findings. *Id.* This evidence includes Dr. Symonds's own examination notes, which the ALJ listed as including the observation that plaintiff had "no difficulty" getting into and out of a chair. *Id.* However, Dr. Symonds's actual observation was that plaintiff got in and out of a chair with "little difficulty" and onto and off of the examination table with "little to moderate difficulty." Tr. 460. The ALJ thus used an inaccurate characterization of Dr. Symonds's own examination findings to undermine his opinion. For this reason and the reasons discussed above, this was not a valid reason to reject the opinion.

The ALJ also stated he gave more weight to the opinions of Dr. Judish and "orthopedic specialist and surgeons" because they generally found little limitations with the use of her right arm and recommended only conservative treatment, including physical therapy. Tr. 33. In

support of this finding, in addition to citing to the opinions of Dr. Judish and orthopedic surgeons, the ALJ cited to treatment notes from an ARNP, a physician assistant, and an acupuncturist—providers who are neither orthopedic specialists nor surgeons. Tr. 336, 348, 651, 654. The ALJ cited to a list of medical visits and a referral to an orthopedic clinic. Tr. 334, 338. And the ALJ cited to Dr. Holland's opinion, which the ALJ rejected on the same page she cited it as support for this finding. Tr. 33. It is unclear how these treatment notes and records relates to Dr. Symonds's opinion or the ALJ's reasons for rejecting it. These citations do not provide support for this finding and instead undermine the ALJ's stated reason for rejecting Dr. Symonds's opinion.

Dr. Judish, an examining physical medicine-rehabilitation specialist, opined that plaintiff could lift and carry up to 10 pounds occasionally and 15 pounds seldom with her right arm, with no overhead reaching with that arm. Tr. 569-71. The ALJ found that Dr. Judish's opinion was generally consistent with the overall record. Tr. 32. But the ALJ's decision to give Dr. Judish's opinion more weight than Dr. Symonds's is based on the ALJ's unsupported finding that Dr. Symonds's opinion was not consistent with the overall evidence. Because that finding was invalid, the ALJ's reason for giving more weight to Dr. Judish's opinion is likewise invalid.

Orthopedic surgeons at a shoulder and elbow clinic found that after four previous shoulder surgeries, further surgery was not warranted and recommended treatment in a pain management clinic and continued physical therapy to improve range of motion and decrease pain. Tr. 548, 612. The orthopedic surgeons did not opine as to functional limitations on plaintiff's use of her right arm. The ALJ fails to explain how a recommendation against surgery and for physical therapy undermines Dr. Symonds's opinion about plaintiff's functioning.

In sum, the ALJ failed to provide valid reasons, supported by substantial evidence, for rejecting Dr. Symonds's opinion.

*4.    Dr. Dalton*

Dr. Dalton reviewed the record in July 2014 and opined that plaintiff could perform sedentary work. Tr. 284. The ALJ again gave this opinion little weight for the same reason as Dr. Staker's opinion—that it was not consistent with the overall evidence in the record including the benign examination findings identified above. Tr. 33. And again, as with Dr. Staker's and Dr. Holland's opinion, this was not a valid reason, supported by substantial evidence, to reject the opinion.

**B.    Severe impairments**

Plaintiff argues that the ALJ erred by finding that her headaches, knee problems, and history of laceration of her right forefoot were not severe impairments. Dkt. 12 at 13. At step two, a claimant must make a threshold showing that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c). An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1508. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The step-two inquiry has been characterized as "a *de minimis* screening device to dispose of groundless claims." *Id.*

*1. Headaches*

The ALJ found that plaintiff had sporadic reports of headaches throughout the record and testified that she had headaches three times a week that last two to three days with dizziness every day and falls with the headaches. Tr. 24. The ALJ found that her allegations were inconsistent with the medical records, which showed that plaintiff began reporting headaches around October 2014 but by December 2014 she reported that they were only occasional, had improved, and were treated with Imitrex. *Id.* The ALJ found that after this, there was no more mention of headaches in the record. Tr. 25. The ALJ found that based on the lack of treatment and lack of ongoing reports of problems with headaches, the impairment did not cause more than a minimal limitation on plaintiff's ability to engage in work-related activity. *Id.*

Plaintiff argues that the ALJ's finding is erroneous because, contrary to the ALJ's finding, she reported having migraines after December 2014. Dkt. 12 at 14. She further asserts that while the condition did improve, it continued to have more than a minimal effect on her ability to work. *Id.* She points to three additional references to headaches in the record: In June 2015 she reported to Dr. Judish that she had migraines once a week. Tr. 570. And in March and May 2016, neurological assessments found her positive for dizziness and headaches. Tr. 589, 598.

Although plaintiff points to three references to headaches in the record that the ALJ did not discuss, merely pointing to the existence of these notes is insufficient to establish harmful error at step two. Where step two has been resolved in the claimant's favor, harmful error occurs only if plaintiff can establish that the ALJ failed to properly analyze evidence that shows work-related limitations beyond those assessed in the RFC finding. *See Molina v. Astrue*, 674 F.3d

1104, 1115 (9th Cir. 2012). The mere existence of an impairment is insufficient proof of a disability. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).

The evidence plaintiff identifies does not discuss the severity or any limiting effects of her headaches. Even if this evidence establishes that, contrary to the ALJ's finding, her headaches persisted beyond December 2014, it does not establish anything more than the existence of headaches beyond that date. Because plaintiff has failed to identify any evidence of limitations from headaches that the ALJ failed to consider, any error here is harmless.

*2.      Knees*

The ALJ found that imaging of plaintiff's knees revealed only mild findings, examinations of her knees and gait were essentially normal, she received conservative treatment without any recommendations for an invasive procedure, and she reported that a knee brace and physical therapy helped relieve her knee pain. Tr. 23. The ALJ therefore found that her knee problems did not cause more than a minimal limitation on plaintiff's ability to engage in work related activity. *Id.*

Plaintiff argues that in making this finding, the ALJ disregarded Dr. Judish's opinion—which she otherwise adopted—that restrictions due to plaintiff's knee and foot conditions were reasonable and that she should only stand and walk one hour at a time for six hours in an eight-hour day. Dkt. 12 at 15. Plaintiff also points to Dr. Symonds's opinion that plaintiff could stand and walk for six hours and sit for six hours in an eight-hour day, and Dr. Dalton's opinion that she could sit for most of the day and walk or stand for brief periods; the ALJ did not discuss these opinions at step two. *Id.* And plaintiff asserts that the ALJ again cited to records that do not support the ALJ's finding. *Id.*

When assessing plaintiff's RFC, the ALJ rejected the portion of Dr. Judish's opinion regarding standing and walking limitations, finding that it was not consistent with the overall record, which failed to support any severe impairment that would warrant these limitations. Tr. 32. The ALJ thus rejected the opinion because it did not comport with her step two finding, despite the fact that she failed to consider it at step two. In so doing, the ALJ relied on circular logic without properly analyzing the import of this opinion at either step two or the RFC assessment.

In addition, the court finds that the ALJ's errors in rejecting Dr. Symonds's and Dr. Dalton's opinions without valid reasons when assessing plaintiff's RFC equally applies to the ALJ's failure to consider them at step two.

The ALJ failed to properly consider all the evidence of plaintiff's knee impairment when evaluating its severity at step two. The ALJ must therefore reevaluate this impairment on remand.

*3. Right foot*

The ALJ found that although the record showed that plaintiff had tenderness and some pain in her right foot caused by a past laceration across the anterior of her right forefoot, the record did not show that she had difficulty with ambulation due to this diagnosis. Tr. 23. The ALJ found that the record failed to support a finding that this impairment caused more than a minimal limitation on her ability to engage in work-related activity. Tr. 23-24.

Plaintiff argues that Dr. Judish, Dr. Symonds, and Dr. Dalton all opined that plaintiff's right foot condition contributed to the standing and walking limitations they opined and the ALJ again failed to explain why she rejected these opinions. Dkt. 12 at 16. She further asserts that one record the ALJ cited as support for her finding actually stated that she ambulated "with

restrictions," contrary to the ALJ's description of the notes, and that the record contains numerous other notes documents her reports of pain in her foot and difficulty walking. *Id.*

As with plaintiff's knee condition, the ALJ's rejection of Dr. Judish's opinion because it does not match the step two finding without having analyzed that opinion at step two, and the ALJ's errors in rejecting Dr. Symonds's and Dr. Dalton's opinions render the ALJ's finding about plaintiff's foot condition invalid. The ALJ must also reevaluate the severity of this impairment on remand.

### C.    RFC finding

Plaintiff argues that substantial evidence does not support the ALJ's RFC finding because of the errors in evaluating the medical evidence identified above. Dkt. 12 at 17. The court agrees. On remand, the ALJ must reevaluate the opinions of Dr. Staker, Dr. Holland, Dr. Symonds, and Dr. Dalton in reassessing plaintiff's RFC.

Plaintiff further argues that, without explanation, the ALJ found plaintiff capable of performing heavier and more frequent lifting that Dr. Judish opined, despite the fact that the ALJ purported to give great weight to this opinion. *Id.* Dr. Judish opined that plaintiff could lift and carry up to 10 pounds occasionally and 15 pounds seldom with no overhead reaching with the right upper extremity, and that she had no lifting, carrying, or reaching limitations with her left upper extremity. Tr. 571. The ALJ adopted Dr. Judish's opinion with respect to plaintiff's right arm, but found that plaintiff could lift and carry and push and pull up to 20 pounds occasionally and 10 pounds frequently with both arms together. Tr. 27. Dr. Judish did not opine as to plaintiff's ability to lift frequently with the right arm, and yet the ALJ found she could lift frequently with that arm so long as she also used her left arm. This finding does not comport with Dr. Judish's opinion and should be reevaluated on remand.

Finally, plaintiff requests that the court direct a finding that she is disabled as of her 50th birthday. Dkt. 12 at 18. She bases this argument on the Medical-Vocational Guidelines, which direct a finding of disabled when a claimant reaches age 50, is limited to sedentary work, and has other vocational characteristics that match plaintiff's. *See* 20 C.F.R. Pt. 404, Subpt. P, Appx. 2, Rule 201.14. However, the court finds that the proper remedy in this case is to allow the ALJ the opportunity to reevaluate the evidence rather than to direct a finding of disability, even for a closed period. The Court therefore declines to direct a finding of disability as of plaintiff's 50th birthday.

## CONCLUSION

The Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall (1) reevaluate plaintiff's knee and foot impairments at step two, (2) reevaluate the medical opinions of Dr. Staker, Dr. Holland, Dr. Symonds, and Dr. Dalton and reassess plaintiff's residual functional capacity, and (3) further develop the record and reevaluate the evidence as needed to redo the disability evaluation process.

DATED this 5th day of November, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 15